UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



———————————————————————

JEFFREY TONDRYK,

Plaintiff,

v.                                                    24-CV-777 (JLS)

DR. BURTON FLETCHER,
PRIMECARE, INC.,
MONROE COUNTY JAIL,

Defendants.

———————————————————————

### DECISION AND ORDER

*Pro se* plaintiff Jeffrey Tondryk currently is incarcerated at the Five Points

Correctional Facility.  He filed this action seeking relief under 42 U.S.C. § 1983 for

conduct that allegedly occurred when he was in custody at the Monroe County Jail.

Dkt. 1.

Tondryk also filed a motion for leave to proceed *in forma pauperis* ("IFP")

with the required affirmation, certification, and authorization.  Dkt. 2.  Because

Tondryk meets the requirements of 28 U.S.C. § 1915(a) and filed the required

documents, he is granted permission to proceed IFP.  The Court, therefore, screens

his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a)–(b).

For the below reasons, claims against the Monroe County Jail are dismissed

without leave to amend; the complaint is otherwise dismissed with leave to amend.

Tondryk's amended complaint is due by **August 3, 2026**.

## DISCUSSION

### I.    LEGAL STANDARD

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)).  A court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if the court determines the action "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)–(2); *see* 28 U.S.C. § 1915(e)(2)(B) (setting forth the same criteria for dismissal).

Generally, a court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however unlikely . . . , that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (citation modified).  But a court may deny leave to amend pleadings when any amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where it appears that granting leave to amend is unlikely to be productive[] . . . it is not an abuse of discretion to deny leave to amend.").

When evaluating a complaint, the court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999).  A

2

"court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), but even a *pro se* complaint must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires the complaint to contain a short and plain statement showing that the plaintiff is entitled to relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In other words, a *pro se* complaint need not provide every last detail in support of a claim, but it must allege sufficient facts to support the claim. *See Shibeshi v. City of N.Y.*, 475 F. App'x 807, 808 (2d Cir. 2012) (district court properly dismissed *pro se* complaint under Section 1915(e)(2) because complaint did not meet pleading standard in *Twombly* and *Iqbal*); *accord Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (setting forth same standard of review).

## II.    TONDRYK'S ALLEGATIONS[1]

On October 21, 2021, Tondryk was arrested and remanded to the Monroe County Jail. Dkt. 1, at 5. Later that month, or in early November, Tondryk asked to be seen at sick call for "pains and deformation that he was experiencing in his left

---

[1] The Court accepts Tondryk's allegations as true for purposes of screening his complaint. Page references to docket entries are to the numbering automatically generated by CM/ECF, which appears in the header of each page.

foot." *Id.* He was seen by Dr. Burton Fletcher, the on-call physician. For the next three years, Fletcher saw Tondryk as Tondryk complained of "agoni[z]ing pains and physical disfigurement." *Id.* at 6. Fletcher approached Tondryk's treatment with a "cavalier attitude" and "sent him for redundant x-rays, checking for broken bones" when it would have been obvious to a competent physician that Tondryk suffered from neuropathy. *Id.* In or around December 2023, Fletcher "was relieved of his duties as the Monroe County Jail physician." *Id.* at 7.

On February 5, 2024, Dr. Paulicino, who is not a defendant to this lawsuit, saw Tondryk and "immediately recognized [Tondryk's] worsening condition and referred him" to outside medical professionals. *Id.* There, Tondryk "was quickly diagnosed with an extreme case of Charcot Neuropathy." *Id.* at 8. Fletcher's failure to diagnose the condition, which "is normally quickly diagnosed in its early stages and corrected," now means that Tondryk's neuropathy is beyond medical correction. *Id.* at 8–9. Consequently, Tondryk suffers from extreme pain and is confined to a wheelchair. *Id.*

Mindful of its obligation to construe Tondryk's allegations to raise the strongest claims they suggest, *see McEachin*, 357 F.3d at 200, the Court interprets his complaint as asserting an inadequate medical care claim under the Fourteenth Amendment. The Court also has considered whether the facts alleged support a municipal liability claim.

4

III.    **SECTION 1983 CLAIMS**

To state a claim under 42 U.S.C. § 1983, a plaintiff "must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Section 1983 "creates no substantive rights[, but] provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

A.    **Monroe County Jail**

Tondryk's claims against the Monroe County Jail must be dismissed because county and municipal departments do not have the capacity to be sued under New York law. *See* Fed. R. Civ. P. 17(b). "It is well-established that 'under New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued.'" *Perros v. Cnty. of Nassau*, 238 F. Supp. 3d 395, 400 (E.D.N.Y. 2017) (citation modified) (quoting *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (citing cases)).

Because the Monroe County Jail is not an entity subject to suit, the claims against the Jail are dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). *See McKenzie v. Cnty. of Erie*, No. 12-CV-912S, 2013 WL 5348084, at *2 (W.D.N.Y. Sept. 23, 2013) (dismissing plaintiff's claims against various Erie County

departments because "[e]ach of these departments is merely an administrative arm of the County, and they therefore lack the capacity to be sued") (collecting cases); *Nowlin v. 2 Jane Doe Female Rochester N.Y. Police Officers*, No. 11-CV-712SC, 2012 WL 1415704, at *2 (W.D.N.Y. Mar. 23, 2012) (dismissing defendant Monroe County Jail because it "is merely an administrative arm of the County of Monroe"). Because claims against the Monroe County Jail cannot be cured with better pleading, dismissal is without leave to amend. *See Cuoco*, 222 F.3d at 112.

### B.    Official Capacity Claims

Tondryk seeks to impose liability against Fletcher in his official capacity and also named PrimeCare, Inc., in its official capacity. Dkt. 1, at 2.

Municipalities "are not vicariously liable under [Section] 1983 for their employees' actions." *Connick v. Thompson*, 563 U.S. 51, 60 (2011). But a municipality "may be liable under [Section] 1983 if the plaintiff's injury was caused by 'action pursuant to official municipal policy.'" *Hernandez v. United States*, 939 F.3d 191, 206 (2d Cir. 2019) (quoting *Connick*, 563 U.S. at 60–61). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61.

"A private entity such as PrimeCare, that contracts to provide medical services to a municipality, is considered a municipal defendant for purposes of [a municipal liability claim]." *James v. Monroe Cnty.*, No. 20-CV-7094 CJS, 2022 WL 17155831, at *11 (W.D.N.Y. Nov. 22, 2022) (collecting cases). Like municipal

6

defendants, private employers are not liable under a *respondeat superior* theory for their employees' constitutional torts. *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 408 (2d Cir. 1990). Instead, the plaintiff must plead and prove that some action pursuant to the private employer's official policy or custom caused a constitutional violation. *Id.*

### 1. Fletcher

"[A] suit against a municipal officer in his or her official capacity is functionally equivalent to a suit against the entity of which the officer is an agent." *Baines v. Masiello,* 288 F. Supp. 2d 376, 384 (W.D.N.Y. 2003) (citing, among others, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). Fletcher is alleged to be an agent of Monroe County. The Court, therefore, considers whether Tondryk plausibly alleged a claim against Monroe County.

To state a Section 1983 claim against Monroe County, Tondryk must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658 (1978).

A plaintiff can establish an official policy or custom by showing any of the following: (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom of which policymakers must have been aware; or (4) a failure by policymakers to properly train or

7

supervise their subordinates, such that the policymakers exercised "deliberate indifference" to the rights of the plaintiff and others encountering those subordinates. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13–14 (2d Cir. 2015) (formal policy officially endorsed by the municipality); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62 (2d Cir. 2014) (widespread and persistent practice); *Carter v. Inc. Village of Ocean Beach*, 759 F.3d 159, 164 (2d Cir. 2014) (failure to train amounting to deliberate indifference); *Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (policymaking official's "express" or "tacit" ratification of low-level employee's actions).

Tondryk did not allege facts showing that Fletcher's alleged unconstitutional conduct arose from a municipal policy or custom. His complaint, therefore, fails to state a Section 1983 claim against Monroe County. To the extent Tondryk asserted a municipal liability claim, it is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Tondryk may replead this claim in an amended complaint. Any amended complaint must name Monroe County as a defendant, identify the policy or custom, and show how the application of that policy or custom caused the denial of his constitutional rights.

### 2. PrimeCare

To allege a Section 1983 claim against PrimeCare, Tondryk must allege that an official policy or custom of PrimeCare caused him to be subjected to the denial of a constitutional right. *See Zahra*, 48 F.3d at 685. Tondryk's allegations do not

8

include facts that show he received inadequate medical care due to a policy or custom of PrimeCare. *See Rojas*, 924 F.2d at 408.

Because the Court cannot rule out the possibility that an amended complaint would succeed in stating a claim against PrimeCare, *see Abbas*, 480 F.3d at 639, Tondryk is permitted to replead his claim against PrimeCare. Any amended complaint must include non-conclusory allegations showing that PrimeCare had an official policy or custom that caused Tondryk to be subjected to the denial of a right guaranteed by the Constitution or federal law.

### C.    Individual Capacity Claim against Fletcher

Because it appears that Tondryk was a pretrial detainee at the time of the events that form the basis of this action, allegations regarding his medical care are analyzed under the Fourteenth Amendment, pursuant to the standard set forth in *Charles v. Orange County*, 925 F.3d 73, 85–86 (2d Cir. 2019); *reaffirmed in Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021). A pretrial detainee may establish a claim for constitutionally insufficient medical care by showing that a state actor exhibited deliberate indifference to his or her serious medical need. *Charles*, 925 F.3d 85–86.

A serious medical need is "a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* at 86. When deciding whether a plaintiff has plausibly alleged "a serious medical need," courts consider "factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an

individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Id.* (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

Deliberate indifference to a pretrial detainee's serious medical need can be alleged with facts that demonstrate the defendants *knew* or *should have known* "that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Darby*, 14 F.4th at 128 (quoting *Charles*, 925 F.3d at 87). Thus, to adequately plead deliberate indifference, Tondryk must plausibly allege that Fletcher exhibited a "culpable recklessness" or "conscious disregard of a substantial risk of serious harm" to his health, or that he "intentionally" "denied him treatment." *See Darby*, 14 F.4th 128–29; *accord Zhang v. City of N.Y.*, No. 23-7469-CV, 2025 WL 485392, at *1 (2d Cir. Feb. 13, 2025) (affirming district court's decision to deny leave to amend inadequate medical care claim where "the proposed amended complaint failed to allege specific facts sufficient to satisfy the *mens rea* requirement").

Tondryk's allegations sufficiently allege a serious medical need, but do not sufficiently allege Fletcher's deliberate indifference. The allegations regarding Fletcher's delivery of medical care suggest sub-par, negligent, or even incompetent medical care that sounds in a state medical malpractice claim; the allegations do not infer medical neglect of constitutional proportions. *See, e.g., Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice

10

involves culpable recklessness"); *Chance*, 143 F.3d at 704 (deliberate indifference plausibly alleged where the defendant-providers' recommendations were not made "on the basis of their medical views, but because of monetary incentives. This allegation of ulterior motives, if proven true, would show that the defendants had a culpable state of mind and that their choice of treatment was intentionally wrong and did not derive from sound medical judgment."). *Cf. Martinez v. Duquin*, No. 20-CV-773-LJV-MJR, 2024 WL 4680372, at *7 (W.D.N.Y. Nov. 5, 2024) (merely alleging that a doctor should have prescribed a different diagnostic test or treatment "is not enough to satisfy the subjective component of a deliberate indifference claim").

Accordingly, Tondryk's Section 1983 inadequate medical care claim is subject to dismissal for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Tondryk may replead this claim in an amended complaint with—if possible—non-conclusory allegations showing Fletcher's culpable recklessness, Fletcher's conscious disregard of a substantial risk of serious harm to Tondryk's health, or that Fletcher intentionally (as opposed to negligently) denied Tondryk.

## IV.   LEAVE TO AMEND

The Court grants Tondryk leave to amend, as directed above. Any amended complaint will **completely replace** the prior complaint in the action. *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977). Any amended complaint must include all of Tondryk's allegations and claims, so it may stand alone as the sole complaint that Defendants must answer.

11

## CONCLUSION

For the above reasons, the claims against the Monroe County Jail are dismissed, without leave to amend; the complaint otherwise is dismissed with leave to amend. Any amended complaint is due by **August 3, 2026**. If he does not submit an amended complaint by August 3, 2026, his complaint will be dismissed without prejudice, and this case will be closed.

## ORDER

IT HEREBY IS ORDERED that Tondryk's IFP motion (Dkt. 2) is granted; and it is further

ORDERED that the claims against the Monroe County Jail are dismissed, without leave to amend; the complaint otherwise is dismissed with leave to amend. The Clerk of the Court is directed to terminate Monroe County Jail as a Defendant to this case; and it is further

ORDERED that Tondryk is granted leave to file an amended complaint, as directed above, by **August 3, 2026**; and it is further

ORDERED that the Clerk of the Court is directed to send to Tondryk this decision and order, a copy of the original complaint (Dkt. 1), a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that, if Tondryk does not file an amended complaint by August 3, 2026, his complaint will be dismissed without prejudice, and the Clerk of Court shall close this case without further order; and it is further

12

ORDERED that, if this case is dismissed because Tondryk does not file an amended complaint, this Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States,* 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure; and it is further

ORDERED that, pursuant to Western District of New York Local Rule of Civil Procedure 5.2(d), Tondryk must notify the Court in writing if his address changes. Failure to do so may result in dismissal of the action.

Dated:    July 1, 2026
          Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE